

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

ROGER DWAYNE SMITH          3404777

*(Enter above the full name of the plaintiff or plaintiffs in this action).*   *(Inmate Reg. # of each Plaintiff)*

**VERSUS**   CIVIL ACTION NO. __2:19-cv-133__
*(Number to be assigned by Court)*

DR. (FIRST NAME UNKNOWN) PAUL; DR. CHARLES LYE;

PA SANDRA MAY; DONNA WARDEN, HSA;

PAMELA GIVEN, HSA. ALL EMPLOYEES OF
WEXFORD HEALTH SOURCES, INC.
SUED IN THEIR OFFICIAL AND INDIVIDUAL CAPACITIES

*(Enter above the full name of the defendant or defendants in this action)*

## VERIFIED COMPLAINT

I.  **Previous Lawsuits**

   A.  Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action or otherwise relating to your imprisonment?

   Yes _____   No __✓__

B.  If your answer to A is yes, describe each lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

   1. Parties to this previous lawsuit:

      Plaintiffs: ___N/A___

      Defendants: ___N/A___

   2. Court (if federal court, name the district: if state court, name the county):

      ___N/A___

   3. Docket Number: ___N/A___

   4. Name of judge to whom case was assigned:

      ___N/A___

   5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?

      ___N/A___

   6. Approximate date of filing lawsuit: ___N/A___

   7. Approximate date of disposition: ___N/A___

II. Place of Present Confinement: Mount Olive Correctional Complex

    A. Is there a prisoner grievance procedure in this institution?

        Yes ✓    No ___

    B. Did you present the facts relating to your complaint in the state prisoner grievance procedure?

        Yes ✓    No ___

    C. If your answer is YES:

        1. What steps did you take? I submitted grievances and followed the three step procedure seeking medical treatment for chronic HCV

        2. What was the result? I was denied the requested treatment.

    D. If your answer is NO, explain why not: N/A

III. Parties

(In item A below, place your name and inmate registration number in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

    A. Name of Plaintiff: Roger Dwayne Smith, # 3404777
       Address: Mount Olive Correctional Complex, One Mountainside Way, Mount Olive, WV 25185

    B. Additional Plaintiff(s) and Address(es): N/A

(In item C below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item D for the names, positions, and places of employment of any additional defendants.)

C. Defendant: DR. PAUL

is employed as: PHYSICIAN FOR WEXFORD HEALTH SOURCES, INC.

at 501 HOLIDAY DRIVE, SUITE 3 PITTSBURGH, PA 15220 - 2749

D. Additional defendants: DR. CHARLES LYE ; PA SANDRA MAY ; DONNA WARDEN, HSA; and, PAMELA GWENS, HSA.

employees of WEXFORD HEALTH SOURCES, INC ONE MOUNTAINSIDE WAY MOUNT OLIVE, WV 25185

IV. **Statement of Claim**

State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

SEE EXTRA SHEETS ATTACHED —

4

IV. Statement of Claim (continued):

V. Relief

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

SEE EXTRA SHEETS ATTACHED

V.  Relief (continued):

_____
_____
_____
_____
_____
_____

VII.  Counsel

  A. If someone other than a lawyer is assisting you in preparing this case, state the person's name:

  A prisoner, Miguel Delgado, # 3419017

  B. Have you made any effort to contact a private lawyer to determine if he or she would represent you in this civil action?

  Yes _____   No __X__

  If so, state the name(s) and address(es) of each lawyer contacted:

  I AM IN SEGREGATION, BESIDES, IT IS OFTEN DIFFICULT TO GET AN ATTORNEY TO REPRESENT A PRISONER IN MEDICAL CASES EVEN IN THE BEST OF CIRCUMSTANCES

  If not, state your reasons: _____
  _____

  C. Have you previously had a lawyer representing you in a civil action in this court?

  Yes __✓__   No _____

6

If so, state the lawyer's name and address:

LYDIA C. MILNES, ESQ
MOUNTAIN STATE JUSTICE
325 WILLEY ST.
MORGANTOWN WV 26505

Signed this 6th day of February, 20 19.

x Roger Smith
_____
Signature of Plaintiff or Plaintiffs

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 6 February 2019.
            (Date)

x Roger Smith
Signature of Movant/Plaintiff

_____
Signature of Attorney
(if any)

7

OFFICIAL SEAL
STATE OF WEST VIRGINIA
NOTARY PUBLIC
Lisa R. Frye
1 Mountainside Way
Mt. Olive, WV 25185
My Commission Expires March 15, 2020

Lisa R. Frye, Notary

STATEMENT OF FACTS

1. Plaintiff Roger Dwayne Smith is a 37 year old prisoner serving a sentence of life without parole in Mount Olive Correctional Complex.

2. Mr. Smith has been infected with Hepatitis C Virus (HCV) for over 13 years, testing positive before his current incarceration and confirmed again after being arrested on October 13, 2005 and blood work was done by medical staff at the Eastern Regional Jail in Berkeley County.

3. Mr. Smith has persistently sought treatment for the chronic HCV infection he suffers from while in MOCC throughout the last ten years but he is always told that treatment will not be provided because he is not sick enough and that just because he has HCV it does not mean treatment is necessary.

4. Mr. Smith has spoken with a long line of medical staff over the past decade, but because of the large turn-over of medical staff in MOCC it is hard to identify them by name.

5. During the past few years Mr. Smith has spoken with Dr. Charles Lye; Sandra May, PA-C; Donna Warden, Health Service Administrator; Pamela Givens, HSA; and Dr. _____ Paul, among others, about his chronic HCV but they always informed him he did not meet the requirements, that he was not sick enough. These individuals also made it clear to Mr. Smith that even if he were on the outside he would not receive HCV treatment, that no one gets treatment for HCV just because they ask for it.

8

6. Mr. Smith experiences abdominal pain in his liver area. He has little appetite, no energy, lack of sleep and is constantly in fear about the state of his health and when his condition will lead to his death.

7. Mr. Smith has submitted dozens upon dozens of Medical Services Request forms (AKA Sick call slips) requesting to see the doctor concerning treatment for HCV and complaining of constant abdominal pain but is always treated, not as a patient, but as a nuisance, forced to endure a revolving door of deliberate indifferent medical staff that "look" and "speak" to him but provide zero HCV treatment.

8. Each time Mr. Smith submits a sick call slip requesting treatment for the chronic HCV or associated symptoms he is first seen by a nurse who informs him she can only refer him to see the PA or MD. Days later he sees either PA May or Dr Iye, or even Dr. Paul. They tell him there's nothing that can be done, that he is not sick enough, they prescribe ibuprofin. It is essentially the same routine over and over again. When Mr. Smith complains that the ibuprofin doesn't help at all, more ibuprofin is prescribed which harms more than help.

9. Once the record is further developed it will become apparent that the type of medical care that these Wexford defendants provide to Mr. Smith is akin to waiting for the house to burn to the ground before purchasing a smoke detector.

10. By denying Mr. Smith HCV treatment according to the well established current standards of medical treatment for persons with chronic HCV the Wexford defendants have sentenced him to a cruel and unusual death.

### Chronic Hepatitis C Virus

11. Hepatitis C viral infection (HCV) is a viral infection that attacks the liver and causes hepatitis, or liver inflammation. It is spread primarily through contact with infected blood.

12. Liver inflammation caused by HCV can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, preventing disease, and making possible essentially all metabolic processes in the body.

13. Liver impairment can cause severe pain, abdominal and gastrointestinal problems, fatigue, weakness, and muscle wasting, difficulty or pain with urination, increased risk of heart attacks, and other side effects.

14. HCV can be either acute or chronic. A small percentage of people who are exposed to infected blood develop an acute infection that their body resolves without treatment. But a significant majority (75% to 85%) of people who develop acute HCV go on to develop Chronic HCV.

15. People with chronic HCV develop fibrosis of the liver, which is a process by which healthy liver tissue is replaced with scarring. Scar tissue cannot perform any of the jobs of normal liver cells, so fibrosis reduces liver function.

16. When scar tissue begins to take over most of the liver, this extensive fibrosis is termed cirrhosis.

17. Cirrhosis is irreversible. It can, and often does, cause additional painful complications, including widespread itching, arthritic pain throughout the body, kidney disease, jaundice, fluid retention with edema, internal bleeding, easy bruising, abdominal ascites, mental confusion, lymph disorders, and even more extreme fatigue.

18. In part because it can be difficult to determine exactly when significant hepatitis fibrosis becomes cirrhosis, most of these complications can occur before cirrhosis. If these complications go untreated, some can cause death.

19. Health care providers who provide care to people with chronic HCV need to be aware of how drugs they prescribe can cause or exacerbate stress to the liver and need to counsel their HCV-positive patients appropriately about prescription and over-the-counter medications that affect the liver, including ibuprofen, naproxen, large doses of acetaminophen, and others.

20. In addition to causing day-to-day pain and other problems, chronic HCV also dramatically increases a person's risk of developing cirrhosis and liver cancer.

21. Of those with chronic HCV, at least half will develop cirrhosis or liver cancer, and almost everyone (70% to 90%) will develop chronic liver disease.

22. Some 19,000 people die of HCV-caused liver disease every year in the United States. HCV is the leading cause for liver transplants in the United States.

23. Each day without treatment increases a person's likelihood of developing chronic liver disease, fibrosis, cirrhosis, liver cancer, painful complications, death from liver failure, and the risk of transmitting HCV to others.

### Standard of Care for Hepatitis C Virus

24. For many years, finding and establishing an effective and safe treatment for HCV infections was a highly elusive goal. The standard treatment, which included the use of interferon and ribavirin medications, failed to cure most patients and was associated with painful and other adverse side effects, including psychiatric and autoimmune disorders, flu-like symptoms, and gastrointestinal distress.

25. In the past four years, the Federal Drug Administration has approved new medications, called direct-acting antiviral (DAA) drugs, which have proven to work more quickly, cause fewer side effects, and treat chronic HCV more effectively.

26. Eradicating HCV from the whole population became possible in December 2013 because of the approval of the first FDA "breakthrough" drugs.

27. In December 2013, the FDA approved a new class of safer, direct-acting, anti-viral drugs that cure HCV infections in 12 weeks of daily pill therapy at a 95% success rate.

28. In January 2014, the Infectious Disease Society of America (IDSA) and the American Association for the Study of Liver Disease (AASLD) issued guidelines recommending sofosbuvir (Sovaldi) and similar new drugs as first-line therapy to replace year-long Interferon-based injections entirely. See, www.hcvguidelines.org.

29. In June 2014 the Federal Bureau of Prisons (FBOP) issued "Clinical Practice Guidelines" (or protocol) for HCV treatment of inmates which specifically lists the IDSA/ASSLD Sofosbuvir twelve week, one pill per day regimen as the

12

safer, more effective, standard of care in all FBOP facilities.

30. Other agencies of the United States, including the Center for Disease Control, Department of Veteran Affairs, and the Surgeon General have adopted the DAA one pill per day, twelve week protocol as the standard of care for treatment of HCV.

31. According to the FBOP guidelines for HCV treatment, the only medical criteria are that the patient; (a) not be pregnant; (b) have sufficient time in custody to complete treatment; and, (c) demonstrate willingness and ability to adhere to rigorous treatment and to abstain from high risk activities.

32. The IDSA/AALSD, FBOP, CDC   HCV protocols do <u>not</u> prescribe delay in HCV treatment until the onset of fibrosis, cirrhosis of the liver, or liver cancer for medical reasons. Studies show treatment delay decreases the benefits associated with the cure.

STATEMENT OF CLAIM

33. Defendants Paul, Lye, May, Warden and Givens' acts and omissions in failing to provide adequate medical care, and delaying care, constitute deliberate indifference to the serious medical needs of prisoner-plaintiff Smith whom is infected with HCV, and they thereby violate the Eighth Amendment to the United States Constitution. At all times relevant, Plaintiff had a serious medical need for treatment of his HCV with DAA drugs, Defendants were aware of Plaintiff's serious need for medical care and acted with deliberate indifference, failed to provide the medical care or failed to direct that the medical care be provided, and as a direct result the Plaintiff was harmed.

34. Defendants acted pursuant to and in accordance with a policy, custom, or practice of withholding treatment with DAA drugs from persons diagnosed with HCV until manifesting in liver fibrosis, liver scarring, cirrhosis of the liver, or liver cancer.

35. As a directive and proximate result of defendants' deliberate and indifferent actions and inactions, Plaintiff has suffered and unless the declaratory and injunctive relief prayed for is immediately granted he will suffer irreversible injuries and complications leading to a painful death as a result of defendants' refusal to treat Mr. Smith's HCV infection with effective DAA drugs.

36. At all relevant times the Defendants acted under color of state law.

Exhaustion of Administrative Remedies

37. Plaintiff has exhausted his administrative remedies concerning claims of being denied medical treatment for his Chronic Hepatitis C Virus. (Please see Exhibit A).
    a) Letter to Donna Warden dated July 18, 2014, 2 pages;
    b) Letter from Donna Warden dated July 24, 2014;
    c) Letter to Donna Warden dated August 12, 2014, 4 pages;
    d) Grievance No. 14-MOCC-Q1-796, 2 pages;
    e) Grievance No. 14-MOCC-Q1-861, 2 pages;
    f) Grievance No. 14-MOCC-Q1-884, 2 pages;
    g) Grievance No. 18-MOCC-Q2-595, 2 pages;
    h) Grievance No. 18-MOCC-Q1-680, 2 pages;
    i) Twenty One (21) different sick call slips from 2009 thru 2018 concerning request for treatment for HCV and associated pain.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff Roger Smith seeks the following Judgment:

1. Issuance of a judgment declaring that Defendants' policy of withholding treatment with DAA drugs from Plaintiff and other inmates diagnosed with HCV violates the Eighth Amendment to the United States Constitution;

2. Entry of a preliminary and permanent injunction directing Defendants to formulate and implement an HCV treatment policy that meets the prevailing standard of care; treat Plaintiff with appropriate DAA drugs; provide an appropriate and accurate assessment of the level of fibrosis he may have; counseling on drug-drug interactions, and ongoing medical care for complications resulting from the delay in treatment and other symptoms associated with HCV; and any further appropriate injunctions to prevent the future deprivation of rights of the Plaintiff;

3. An award of appropriate compensatory damages against Defendants, jointly and severally, for all claims for which compensatory damages are available, in an amount to be determined by a jury;

4. An award of punitive damages against the Defendants sued in their respective individual capacities, and Wexford for claims arising under U.S. Const. amend. VIII, in an amount to be determined by a jury;

5. Costs and disbursements;

6. Such other relief as the Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS TRIABLE TO THE JURY

Date: Feb. 6th, 2019      Respectfully Submitted,

x *Roger Smith*

Roger D. Smith, # 3404777
Mount Olive Correctional Complex
One Mountainside Way
Mt. Olive WV    25185

16